**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SUSAN ELAINE MOORE,
Plaintiff-Appellant,

v.

JPS AUTOMOTIVE, L.P.; JPS
AUTOMOTIVE PRODUCTS CORPORATION,
Defendants-Appellees,

No. 97-1278

and

J. P. STEVENS & CO.,
Defendant.

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,
Amicus Curiae.

Appeal from the United States District Court
for the District of South Carolina, at Greenville.
Henry M. Herlong, Jr., District Judge.
(CA-96-242-20-6)

Argued: December 3, 1997

Decided: January 13, 1998

Before WIDENER and HAMILTON, Circuit Judges, and
MICHAEL, Senior United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** William Andrew Arnold, ARNOLD & COE, L.L.P., Greenville, South Carolina, for Appellant. Jennifer Susan Goldstein, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae. Glenn Robert Goodwin, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., Greenville, South Carolina, for Appellees. **ON BRIEF:** Edward L. Turnage, Travelers Rest, South Carolina, for Appellant. C. Gregory Stewart, General Counsel, J. Ray Terry, Jr., Deputy General Counsel, Gwendolyn Young Reams, Associate General Counsel, Lorraine C. Davis, Assistant General Counsel, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae. M. Baker Wyche, III, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., Greenville, South Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Susan Elaine Moore appeals the district court's grant of summary judgment in favor of JPS Automotive L.P. and JPS Automotive Products Corporation (JPS) on Moore's retaliation claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.[1] We affirm.

I

On August 29, 1988, Moore began working at JPS's Parker Plant in Greenville, South Carolina as a spare trim operator. Moore was ter-

_____

[1] J.P. Stevens & Company, Inc. was also a defendant in this case but was dismissed by stipulation of the parties.

2

minated from that position on September 20, 1988, for excessive absenteeism.**2**

Moore was subsequently employed by Personnel, Inc., a temporary employment agency in Greenville. Moore was assigned to work for JPS on December 27, 1994, and worked as an attacher at the Parker Plant until her termination on February 26, 1995.

During her second tenure at JPS, Moore was sexually harassed by a male coworker, Jackie Stewart. Among other things, Stewart constantly rubbed his body against Moore's, commented on Moore's underclothing, noting the color of her bra, inquired what kind of panties she wore, and told her he wanted to "eat[her] pussy." (J.A. 78, 79-81).

On February 20, 1995, Moore informed her supervisor, Janet Gillespie, that she was having problems with some of her coworkers. In response, Gillespie told Moore to return to work, adding that she would "take care of it later." (J.A. 125). During this conversation, Moore did not inform Gillespie that the gravamen of her complaints were sexual in nature.

The next day, February 21, Moore met with Gillespie and two other supervisors and alleged that she had been sexually harassed. During this meeting, Moore recounted the details of Stewart's harassment. In response, Gillespie rolled her eyes, told Moore that she "should get used to it," that it "happens everywhere," and that she should return to work. (J.A. 82, 126). Moore, who had been crying, did not want to return to work, and Gillespie agreed to let her go home.**3**

Moore did not come to work the next day because she was still upset, but returned the following day, February 23, and was assigned to a work area away from Stewart. Before her shift began, Gillespie addressed all the shift's workers, telling them to"keep [their] private business to [themselves]." (J.A. 126). On February 26, while she was

_____

**2** Moore was absent seven days in less than a thirty-day period.
**3** On February 21, Gillespie also interviewed Stewart who denied Moore's allegations.

3

at work, Moore received a call advising that her daughter was ill. Gillespie told Moore that if she left work early she would be fired for absenteeism. Moore left work and was terminated.

Moore's attendance record during her second tenure at JPS was a little better than her first, but not by much. Excluding the events in question in late February, Moore was absent on January 10 and 18 and February 6 and 12. She was also late on January 20.

JPS had an absentee policy which required counseling to core employees after a certain number of absences and allowed discharge of a core employee only after the thirteenth absence. Moore contends that even though she was a "non-core" employee, the absentee policy applied to her and that she was treated differently than the thirty non-core employees terminated between December 1994 and June 1995. Of the non-core employees terminated between December 1994 and June 1995, all had fewer than thirteen absences. Some of these employees had more and some had fewer absences than Moore. None of the non-core employees terminated between December 1994 and June 1995 were fired for the second time for absenteeism, as was Moore.

On December 29, 1995, Moore filed this Title VII retaliatory discharge action in the Court of Common Pleas for Greenville County, South Carolina. The case was removed to the United States District Court for the District of South Carolina.

On September 9, 1996, JPS filed a motion for summary judgment. The motion was referred to a United States magistrate judge. On October 16, 1996, the magistrate judge issued his report and recommendation in which he recommended denial of JPS's motion for summary judgment.

After JPS filed objections to the magistrate's report and recommendation, the district court issued an order granting summary judgment to JPS and adopting only those portions of the report and recommendation which were consistent with its ruling. Moore filed a timely notice of appeal.

4

II

We review a grant of summary judgment de novo . See Farwell v. Un, 902 F.2d 282, 287 (4th Cir. 1990). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We construe all facts and draw reasonable inferences in favor of the nonmovant. See Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 255 (1986).

In order to establish a prima facie case of retaliation in violation of Title VII, a plaintiff must show that "(1) the employee engaged in protected activity; (2) the employer took adverse employment action against the employee; and (3) a causal connection existed between the protected activity and the adverse action." Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985). If a plaintiff establishes a prima facie case, the burden shifts to the employer to produce evidence that shows some legitimate, nondiscriminatory reason for its actions. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). If the employer meets this burden, the burden then shifts back to the plaintiff to show that the reason proffered by the employer was false and that retaliation was the real reason for the adverse action. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 514-15 (1993).

JPS concedes that Moore established a prima facie case of retaliation. This concession is of no help to Moore because the evidence in this case demonstrates that Moore was not discharged because she reported sexual harassment to her supervisors, but rather because she was excessively absent from work. In fact, Moore all but admitted she was discharged on account of absenteeism when she stated in her deposition that "maybe" she had an absenteeism problem. (J.A. 63). Moreover, Moore was dismissed in 1988 from employment at the Parker Plant for seven absences in less than a thirty-day period. When she regained employment in late 1994, she essentially picked up where she left off. Prior to the incidents in late February 1995, Moore was absent four times and was late once.[4]  Furthermore, JPS attempted

_____

[4] Contrary to Moore's argument, there is no genuine issue of fact with respect to the number of days she missed work. Moore has never pro-

5

to remedy the situation by placing her in a work area away from Stewart. Finally, all of the non-core employees terminated between December 1994 and June 1995 had fewer than thirteen absences, and some of these employees had fewer absences than Moore. Thus, assuming the absentee policy applied to non-core employees, no discriminatory intent can be gleaned from JPS's failure to follow it in this case. In sum, although Moore's termination occurred five days after she first reported that she was being sexually harassed and Gillespie's response fell short of exemplary, Moore's attendance record, coupled with her activity during her previous employment at the Parker Plant, her admission at her deposition that she may have had an absenteeism problem, JPS's attempt to resolve the situation by placing her in a work area away from Stewart, and the evidence that other non-core employees were dismissed with fewer absences than Moore, demonstrates that the reason for Moore's termination--excessive absenteeism--was not false and that retaliation was not the reason for Moore's discharge. Summary judgment was, therefore, properly granted in favor of JPS.

III

For the reasons stated herein, the judgment of the district court is affirmed.**5**

<u>AFFIRMED</u>

_____

duced any evidence challenging JPS's assertion that she was absent on January 10 and 18 and February 6 and 12, and late on January 20. During her deposition, Moore stated that she simply could not "remember" being absent on those days. Moore's inability to remember does not create a genuine issue of fact.

**5** We agree with the magistrate judge and the district court that counsel for JPS pursued a highly inappropriate line of inquiry during Moore's deposition. Specifically, counsel for JPS inquired extensively into, among other things, details concerning: (1) Moore's gynecological health; (2) whether she ever offered to have sex with anybody for money; and (3) whether she took off her bra at work. Obviously, the information sought by these inquiries was not "reasonably calculated to lead to the discovery of admissible evidence," Fed. R. Civ. P. 26(b)(1), as the only issue in the case was whether Moore was fired because she reported Stewart's acts of harassment.